[Cite as *State v. Hardgrove*, 2022-Ohio-3993.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2021CA00154 |
| DUSTIN DALE HARDGROVE | |
| | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal Appeal from the Canton Municipal
                             Court, Case No.  2021CR03240

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      November 8, 2022

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

KRISTEN BATES-AYLWARD                 GEORGE URBAN
CANTON LAW DIRECTOR                   116 Cleveland Avenue, NW
JASON P. REESE                        Suite 808
CANTON CITY PROSECUTOR                Canton, Ohio  44702
CARRIE D'ANDREA
ASSISTANT PROSECUTOR
218 Cleveland Avenue, SW
Canton, Ohio  44702

*Wise, J.*

**{¶1}** Appellant Dustin Hardgrove appeals his conviction on one count of voyeurism, entered in the Canton Municipal Court following a jury trial.

**{¶2}** Appellee is the state of Ohio.

## STATEMENT OF THE FACTS

**{¶3}** For purposes of this Opinion, the relevant facts and procedural history are as follows:

**{¶4}** On July 14, 2021, Appellant Dustin Hardgrove was charged with one count of Voyeurism, in violation of R.C. § 2907.08 (B), a second-degree misdemeanor.

**{¶5}** On November 15, 2021, the matter proceeded to jury trial. At trial, the jury heard the following testimony:

**{¶6}** Appellant Dustin Hardgrove lived with his ex-girlfriend, S.P. in Canton for several years, until about 2021. (T. at 133). He lived with her and her adult daughter M.P., who was twenty-two years old and had moved back into their residence in 2020. (T. at 128).

**{¶7}** On July 6, 2021, while cleaning Appellant's work book bag, S.P. discovered a cell phone that she had never seen before and turned it on because she suspected Appellant of cheating. (T. at 131-33, 135-36). When she did, S.P. found two videos of her daughter M.P. (T. at 136-37). The videos showed M.P. getting dressed and undressed after showering, one of which occurred around 5:00 a.m. (T. at 142-43, 149-50, 282-84). In one video, M.P.'s breasts were visible and in another, her buttocks were visible. The family dog blocked view of her pelvic area. (T. at 139, 143, 148-49, 218). In one of the videos, a man's face is visible while he was setting up the camera strategically in the

hallway near a closet Appellant used across from M.P.'s bedroom. (T. at 145, 154-55, 230). M.P. testified that she had no knowledge that she was being recorded, and she felt like she could not "live in her own house without her privacy being invaded." (T. at 195, 217). The video showed a man with glasses, facial hair (beard and mustache), ears "stickin' out", a hat being worn backwards, the same shoes Appellant was known to wear, his voice, and "scrawny" and "hairy" legs. (T. at 145, 162-63, 195, 217, 273).

{¶8} S.P. showed the video to her close friend, Jennifer. (T. at 217). Because all of these attributes matched Appellant, S.P., M.P. and Jennifer all believed the man in the video was Appellant. (T. at 162-163; 195, 217). S.P. testified that other men did not come to the house, and she was familiar with Appellant and his voice, which could be heard in the videos, because she was in a relationship and living with him. (T. at 140-41, 147-48, 162-63, 195, 273).

{¶9} S.P. also testified that in the past, Appellant had used his cell phone to send pictures of his penis to other women. (T. at 156).

{¶10} S.P. called the police and then contacted Appellant about the videos and he told her, "I don't remember doing that. If I did it, I don't remember." (T. at 166).

{¶11} Upon arriving at the residence, Deputy House of the Stark County Sheriff's Office spoke with S.P. and M.P. and confirmed that M.P. did not give anyone permission to videotape her. (T. at 228-229). Deputy House testified that in his experience as a police officer, the purpose of videotaping a young woman naked is for personal pleasure. (T. at 234).

{¶12} Deputy House testified that he spoke with Appellant who told him that "basically he was kinda saying he might of done it but he didn't remember bec - or he

couldn't remember because he was drinking but he said he was kinda - - to me he was kinda of confessing that he did but at the same time he was trying to say he didn't." (T. at 239). He stated that Appellant also asked him about the sort of charges he would face and the duty to register for sex offenses. (T. at 239-40). Deputy House testified that he felt that Appellant gave inconsistent statements in his interview from what he said initially and then was "backtracking." (T. at 240). Deputy House's recorded interview with Appellant was played for the jury. (T. at 225-240).

{¶13} Detective Brian Johnson also testified. He explained to the jury that based on his training and experience investigating sex crimes, voyeurs typically record their victims so that they have the recordings for future use, most likely to masturbate while watching them. (T. at 261, 264). He stated that voyeurs typically record their victims, often with hidden cell phones, or even cameras with vides built in and hidden behind picture frames. (T. at 264). In cases such as this where a cell phone is set up facing a woman's bedroom, the voyeur is typically trying to capture the victim doing things in the privacy of their own room and then masturbate to said images later. *Id.*

{¶14} Appellant testified in his own defense at trial and denied that he ever took videos of M.P. without her knowledge. (T. at 271, 285). Appellant also stated that no other males were in the home when he was there, and that he would know if another man was in the house at 4:50 in the morning. (T. at 273, 282). Further, he identified his own voice on the recordings. (T. at 273). Appellant confirmed that he told Deputy House that if he did it that he wouldn't remember it and wouldn't do it in the right frame of mind; however, he said that he was under "extreme duress during [his] interview." (T. at 287).

**{¶15}** Following deliberations, Appellant was convicted of one count of Voyeurism.

**{¶16}** The trial court sentenced Appellant to one-hundred eighty (180) days in the Stark County Jail with all but forty-five (45) days suspended. Appellant was also placed on two years probation and ordered to complete a sex offender program. Appellant was also ordered to register as a Tier 1 Sexual Offender for fifteen (15) years and have no contact with the victim.

**{¶17}** Appellant now appeals, raising the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

**{¶18}** "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.

**{¶19}** "II. THE APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

**I., II.**

**{¶20}** In his first and second assignments of error, Appellant argues his conviction is not supported by the manifest weight or sufficiency of the evidence. We disagree.

**{¶21}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered.' " *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶22}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶23}** Appellant herein was convicted of Voyeurism, in violation of R.C. §2907.08(B), which provides:

No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to videotape, film, photograph, or otherwise record the other person in a state of nudity.

**{¶24}** Appellant argues that the state failed to prove that he was the one who used the cell phone to videotape M.P. or that he had done so for the purpose of sexual arousal or gratification.

**{¶25}** R.C. §2901.22(A) states:

A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to

accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

**{¶26}** "Surreptitious" is defined in Black's Law Dictionary as "(Of conduct) unauthorized and clandestine; done by stealth and without legitimate authority." *Black's Law Dictionary*, surreptitious (11th Ed. 2019).

**{¶27}** Upon review, we find that the state introduced legally sufficient evidence to support Appellant's voyeurism conviction.

**{¶28}** The State presented evidence that the phone with video recordings on it was found in Appellant's book bag, and that the phone had been hidden in a hallway closet only used by Appellant and pointed in the direction of M.P.'s bedroom. Testimony was also presented that no other men were in the house during the time periods when these videos were taken. The state also presented evidence via the testimony of M.P., S.P. and Jennifer that the man in the video recordings was Appellant based on his voice, his legs, his ears, etc. Further, testimony by Dep. House described Appellant's statements as inconsistent and backtracking. (T. at 240).

**{¶29}** Additionally, Det. Johnson explained that in his experience, such recordings are made and used for the purpose of sexual gratification. (T. at 264).

**{¶30}** The trier of fact may infer a person's intent from the surrounding facts and circumstances. (*State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293; *State v. Horrigan* (Feb. 19, 1999), 2nd Dist. No. 17260).

**{¶31}** Courts have held that the sexual-arousal and/or gratification element may be inferred where there is no innocent, i.e., nonsexual, explanation for the offender's conduct. *See, e.g., Huron v. Holsapple* (Aug. 8, 1997), 6th Dist. No. E–96–063, 1997 WL

457971, at *3 (offender was caught "looking at the victim through her window during a time in the morning when the victim, a fourteen-year-old girl, was dressing for school"); *State v. Million* (1989), 63 Ohio App.3d 349, 351, 578 N.E.2d 869 (evidence that the offender used a hand-held mirror to look into an adjacent bathroom stall would support an inference of a purpose of sexual arousal or gratification "since innocent explanations for his behavior do not readily come to mind").

**{¶32}** Courts have also found a purpose to sexually arouse or self-gratify in cases where a voyeur kept autoerotic materials in his car while he peered through a home's window, (*State v. Haldeman* (Nov. 22, 2000), 2nd Dist. No. 18199, 2000 WL 1726858), where a voyeur repeatedly peered through a home's window while apparently masturbating, (*State v. Gonzales* (Mar. 12, 1999), 6th Dist. No. WD–98–057, 1999 WL 128580) , and where a voyeur climbed a ladder to peer through a window and watch a young girl as she dressed for school. (*Huron v. Holsapple* (Aug. 8, 1997), 6th Dist. No. E–96–063, 1997 WL 457971).

**{¶33}** Here, as set forth above, the state presented evidence that Appellant videotaped M.P without her knowledge or permission when she was dressing and/or undressing. Appellant then kept the video recordings on a secret cell phone he kept hidden in his work bag. Given Appellant's secretive tactics and the nature of the sexually explicit material, the trier of fact could have reasonably inferred that Appellant's acts were done for the purpose of sexual arousal or self-gratification.

**{¶34}** While Appellant argues that S.P. and M.P.'s testimony was "tainted with anger and revenge for Appellant", the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552

N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We note circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey,* 64 Ohio St.3d 353, 1992-Ohio-44, 595 N.E.2d 915. It is to be given the same weight and deference as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**{¶35}** Accordingly, we conclude that the evidence, if believed, established that Appellant surreptitiously invaded M.P.'s privacy by videotaping, filming, photographing, otherwise recording, or spying or eavesdropping upon her in her own home with the use of a cell phone for the purpose of sexually arousing or gratifying himself. We hold that the evidence was sufficient to support Appellant's conviction for voyeurism under R.C. §2907.08(B). Furthermore, we cannot say that the trier of fact clearly lost its way or that it created a manifest miscarriage of justice. This is not the exceptional case where the evidence weighs heavily against conviction

**{¶36}** Appellant's assignments of error are overruled.

**{¶37}** For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.

JWW/kw 1103